**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **FOXBOROUGH DEVELOPMENT CORPORATION, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF HAHIRA; WAYNE BULLARD, in his Official Capacity as Mayor; TERRY BENJAMIN, in his capacity as Council Member; ALLEN CAIN, in his capacity as Council Member; RALPH CLENDENIN, in his capacity as Council Member; and ROSE ADAMS, in her capacity as Council Member,** <br><br> Defendants. | Civil Action: <br> 7:09-CV-106 (HL) |

**ORDER**

Currently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 15). The Motion has been fully briefed by the parties and is ripe for adjudication. After review of the briefs, pleadings, discovery materials, and relevant case law, the Court grants Defendants' Motion for Summary Judgment (Doc. 15).

**I.   FACTS**[1]

Plaintiff is a real estate development corporation. It developed the Woodbridge and Lawson Farms subdivisions in Hahira, Georgia. The City of Hahira maintains

---

[1] Local Rule 56 requires a respondent to a motion for summary judgment to respond to each of the movant's numbered material facts. Any material facts not specifically controverted by specific citation to the record are deemed to be admitted. Plaintiff did not respond to Defendants' Statement of Material Facts, so the facts contained therein are deemed admitted.

certain subdivision regulations which control the development of subdivisions. This case revolves around the following regulation relating to subdivision street lights:

> 6-9.3  **Monthly Payments.** The developer shall pay the monthly cost of street light operation to the City Manager until the City accepts street light infrastructure. The City of Hahira shall assume monthly payment for energy usage and maintenance at the time of:
>
> 1. Final plat approval, and;
>
> 2. Build-out of subdivision or build-out of each phase.

Developers requesting that the City assume payments for subdivision lighting must submit a written request to the City, at which time the request is reviewed by the City Council. The City Manager is available to answer questions or provide clarification regarding the subdivision regulations. At some unspecified point in time, the City Manager discussed the requirements of Section 6-9.3 with Plaintiff's representative.

In June 2009, Plaintiff requested that the City assume monthly payments for the street lights in the Woodbridge and Lawson Farms subdivisions. In July 2009, the City Manager notified Plaintiff that the request was denied because both requirements of Section 6-9.3 had not been met. At the time of Plaintiff's request, 25 of the 65 lots in Lawson Farms were developed, a completion rate of 35%. Approximately 50 of the 78 lots in Woodbridge were developed, a completion rate of 64%. In August 2009, however, apparently as a concession to Plaintiff, the City Council voted to assume payments for the street lights in Woodbridge. The City

2

Council voted to deny the request to assume payments for the street lights in Lawson Farms.

On August 28, 2009, Plaintiff filed this case against Defendants. Plaintiff contends that Section 6-9.3 is void for vagueness and violates the Fifth and Fourteenth Amendments. Plaintiff also contends that its equal protection rights have been violated. Finally, Plaintiff alleges a violation of its rights pursuant to 42 U.S.C. § 1983. Defendant has moved for summary judgment in its favor on all three claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. Id. at 324-26. If the evidence that the nonmovant presents, however, is "not significantly probative" or is "merely colorable," then summary judgment may be granted. Anderson, 477 U.S. at 249. This evidence must consist of more than mere conclusory allegations. *See* Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

## III. ANALYSIS

### A. Vagueness

Plaintiff contends that Section 6-9.3 is void for vagueness as it does not "appraise an applicant of common intelligence of the standard which he should anticipate the governing body will consider." Outdoor Sys., Inc. v. City of Atlanta, 885 F.Supp. 1572, 1585 (N.D. Ga. 1995). Defendants argue in response that as Section 6-9.3 states the requirements for assumption of utility payments - final plat approval and build-out of the subdivision - it cannot be said that the regulation provides no

4

rule at all or that it is substantially incomprehensible. Defendants also note that if there is a question about whether a subdivision has been built out, the City Manager is available to discuss the matter.

"Vagueness arises when a statute is so unclear as to what conduct is applicable that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Wilson v. State Bar of Ga., 132 F.3d 1422, 1429 (11th Cir. 1998) (quoting United States v. Gilbert, 130 F.3d 1458, 1462 (11th Cir. 1997)). "The void-for-vagueness doctrine serves two central purposes: (1) to provide fair notice of prohibitions, so that individuals may steer clear of unlawful conduct; and (2) to prevent arbitrary and discriminatory enforcement of laws." Mason v. Fla. Bar, 208 F.3d 952, 959 (11th Cir. 2000). The Eleventh Circuit has established a very lenient standard of review with regard to commercial statutes like Section 6-9.3. "Such statutes are impermissibly vague only if they provide no rule or standard at all. Uncertainty is not enough for the commercial regulatory statute to be unconstitutionally vague; rather, it must be substantially incomprehensible." Cotton States Mut. Ins. Co. v. Anderson, 749 F.2d 663, 669 (11th Cir. 1984) (internal citations, quotation marks, and alteration omitted).

Plaintiff argues that Section 6-9.3 does not pass muster because what constitutes a "build-out" is not defined, and whether a subdivision has been built-out is one of the factors used to determine if and when the City would assume monthly payments for energy usage and maintenance.

It is true that the term build-out is not defined in Section 6-9.3. Nevertheless, the Court concludes that Section 6-9.3 is not substantially incomprehensible. The case of Reserve, Ltd. v. Town of Longboat Key, 17 F.3d 1374 (11th Cir. 1994), is instructive. There, the plaintiff developer obtained a building permit from the Town of Longboat Key to construct condominium units and a spa. At the time the plaintiff obtained the permit, a section of the town code provided that a building permit would be revoked if, after construction commenced, no "substantial work" was accomplished in any 30-day period. Id. at 1376. Some time later, Longboat Key notified the plaintiff that substantial work had not been completed on the complex within the last 34 days, and warned that the building permit would be revoked if substantial work was not completed by a date certain. Id. The plaintiff contacted Longboat Key to determine what would constitute substantial work, and was informed that the completion of five pile caps would be considered substantial work. Id. The plaintiff, however, did not complete the work as directed, and Longboat Key revoked the plaintiff's building permit for failure to complete substantial work on the complex within a 30-day period. Id.

The plaintiff eventually sued Longboat Key, claiming, among other things, that revocation of its building permit, pursuant to the substantial work standard, violated its due process rights because the substantial work standard was unconstitutionally vague. Id. On appeal, the plaintiff argued that the Longboat Key town code did not contain guidelines for determining when substantial work had been completed, and

that the term substantial work, standing alone, was unconstitutionally vague on its face. Id. at 1378.

In rejecting the plaintiff's argument, the Eleventh Circuit determined that the term substantial work was not substantially incomprehensible as is required to find a commercial regulation unconstitutionally vague. Id. The court noted that upon request, Longboat Key informed the plaintiff that the completion of five pile caps would be considered substantial work, and this meant that the term was in fact defined for the plaintiff by Longboat Key officials. Id. The plaintiff argued that because substantial work had to be defined on a case-by-case basis, the phrase was unconstitutionally vague on its face. The court declined to create such a rule, noting that what constitutes substantial work necessarily varies from project to project, as substantial work on a major development would be different from substantial work on a single residence, and further, what constitutes substantial work could change depending on the stage of the project in question. Id. The Eleventh Circuit determined that Longboat Key did not need to provide a more definite standard for the revocation of building permits, and held that the term substantial work was not unconstitutionally vague. Id. at 1378-79.

Plaintiff complains because the City Manager or someone else associated with the City has to determine whether a subdivision is built-out. However, the fact someone has to determine on a case-by-case basis whether a subdivision has been built-out does not render Section 6-9.3 unconstitutionally vague. Further, it is undisputed that the City Manager makes himself available to individuals who have

7

questions about Section 6-9.3, and made himself so available to Plaintiff. As shown in Reserve, Ltd., the fact that the City made someone available to answer questions about the regulation weighs against a finding that Section 6-9.3 is void for vagueness. Id. at 1378-79; *see also* Georgia Outdoor Network v. Marion County, Ga., 652 F.Supp.2d 1355, 1366 (M.D. Ga. 2009) (the fact that the planning and zoning board was available to answer the applicant's questions or clarify the requirements of the ordinance at issue weighed against a finding of vagueness).

Plaintiff relies on Hynes v. Mayor of Oradell, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), in support of its argument. Hynes dealt with a municipal ordinance which required advance notice to the local police department by any person desiring to canvass, solicit, or call from house to house for a recognized charitable cause or for a federal, state, county, or municipal political campaign or cause. Id. at 612. The Supreme Court determined that the ordinance was void for vagueness because the coverage of the ordinance was unclear, the ordinance did not sufficiently specify what people must do in order to comply, the ordinance did not provide explicit standards for those who apply, and because the ordinance might "trap the innocent by not providing fair warning." Id. at 621-22 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972)).

Hynes is distinguishable from the case at bar for a number of reasons. First, the Hynes ordinance involved restrictions on First Amendment rights, which the "government may regulate . . . only with narrow specificity." Id. at 620 (quoting NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963)). "The

8

general test of vagueness applies with particular force in review of laws dealing with speech. '(S)tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.'" Id. (quoting Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959) (additional citations omitted)). The regulation at issue in the case now before the Court is a commercial regulation that has no constitutional implications. An "economic regulation is subject to a less strict vagueness test." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Second, the Hynes ordinance provided for a criminal penalty for those persons who violated the ordinance. Specifically, anyone violating the ordinance would be fined in an amount not exceeding $500 or be imprisoned in the county jail for a period not exceeding 90 days, or be both fined and imprisoned. Hynes, 425 U.S. at 611 n.1, 613 n. 2. Both the Supreme Court and the Eleventh Circuit have "'expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" Leib v. Hillborough County Pub. Transp. Comm'n, 558 F.3d 1301, 1310 (11th Cir. 2009) (quoting Vill. of Hoffman Estates, 455 U.S. at 498-99)). In other words, "the standard for certainty is higher" for statutes that impose criminal sanctions because a violation could result in someone being imprisoned. *See* Kolender v. Lawson, 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859, 75 L.Ed.2d 903 (1983). Here, however, there is no

9

danger that Section 6-9.3 may "trap the innocent" because there are no criminal penalties associated with the regulation.

Finally, the Hynes ordinance does not involve land use or land development. A municipal ordinance that involves speech and carries possible criminal penalties provides little guidance for a court considering the propriety of a local subdivision regulation.

The Court finds that Section 6-9.3 is not unconstitutionally vague. Accordingly, Defendants are entitled to summary judgment on Plaintiff's vagueness claim.

**B.    Equal Protection**

Plaintiff next contends that its equal protection rights have been violated. It is Plaintiff's position that Section 6-9.3 has not been equally applied to Plaintiff and other developers.

Under the Equal Protection Clause, the states cannot make distinctions which burden a fundamental right, target a suspect class, or intentionally treat one differently from other similarly situated without any rational basis for the difference (the "class of one" theory). Radvansky v. City of Olmstead Falls, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff contends that Section 6-9.3 burdens a fundamental right.[2]

---

[2]The Court will only consider whether Section 6-9.3 burdens a fundamental right. Plaintiff is not a member of a suspect class, and has stated that the class of one theory does not apply. However, even if Plaintiff were alleging a class of one equal protection claim, the claim would fail. To prove a class of one claim, the plaintiff must show "(1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." Leib, 558 F.3d at 1307 (citation omitted). Plaintiff has not shown that its subdivisions are similarly situated to the alleged comparator subdivisions.

Fundamental rights are those created by the Constitution. Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003). Voting is a fundamental right. Lubin v. Parish, 415 U.S. 709, 721, 94 S.Ct. 1315, 1322, 39 L.Ed.2d 702 (1974) (Douglas, J., concurring). There is a fundamental right to interstate travel. Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899 (1986) (Brennan, J., plurality opinion). The right to personal security and bodily integrity is a fundamental right. T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla., 610 F.3d 588, 613 (11th Cir. 2010). Parents have a fundamental right to control their children's upbringing. Frazier ex rel. Frazier v. Winn, 535 F.3d 1279, 1284 (11th Cir. 2008). There is also a fundamental right to marry, to have children, to marital privacy, and to abortion. Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997) (citations omitted).

On the other hand, the Supreme Court has held that property interests are not fundamental rights, as they "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Courts have held that there is no fundamental right to fire protection, Jackson v. Byrne, 738 F.2d 1443, 1446 (7th Cir. 1984) ("The Constitution creates no positive entitlement to fire protection."); no fundamental right to municipal water service, Magnuson v. City of Hickory Hills, 933 F.2d 562, 567 (7th Cir. 1991) ("We do not consider the right to

continued municipal water service such a fundamental right. . . .") and Golden v. City of Columbus, 404 F.3d 950, 960 (6th Cir. 2005); no fundamental right to free waste collection, Beauclere Lakes Condo. Ass'n v. City of Jacksonville, 115 F.3d 934, 935 (11th Cir. 1997); no fundamental right to access real property, Hager v. City of West Peoria, 84 F.3d 865, 872 (7th Cir. 1996); and no fundamental right to snow removal or street maintenance, Pheasant Run Condo. Homes Ass'n v. City of Brookfield, 580 F.Supp.2d 735, 739 (E.D. Wis. 2008). Further, "zoning and land use issues do not implicate fundamental rights." Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1239 (9th Cir. 1994) (citation omitted).

Similar to the latter group of cases, Section 6-9.3 does not implicate a fundamental right. Thus, Plaintiff's equal protection claim is subject only to rational basis review. "The rational basis test asks (1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." Leib, 558 F.3d at 1306 (citing Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1241 (11th Cir. 1991)). Under the more lenient rational basis test, a state action does not have to actually further a legitimate interest. It is enough that the governing body "*could rationally have decided* that" the action would further the interest. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (emphasis in original). A state "has no obligation to produce evidence to sustain the rationality of a statutory classification." Leib, 558 F.3d at 1306 (quoting Heller v. Doe by Doe, 509 U.S. 312, 320, 113 S.Ct.

2637, 2643, 125 L.Ed.2d 257 (1993)). "Rather, a statute is presumed constitutional, and the burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." Id. (citing Heller, 509 U.S. at 320).

Here, Plaintiff does not contest the City's power to regulate subdivisions. The only question is whether Section 6-9.3 has a rational basis, and the Court finds that it does. Assuming the monthly payment for energy usage and maintenance of the street lights in a subdivision obviously results in a cost to the City. According to Defendants, until the development is built-out, the tax base to support the payments is not in place. Cost has been recognized as a rational basis for differential treatment. See Srail v. Vill. of Lisle, Ill., 588 F.3d 940, 948 (7th Cir. 2009); Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 687 (7th Cir. 2005); Bonner v. Lewis, 857 F.2d 559 (9th Cir. 1988); Delight, Inc. v. Baltimore County, 624 F.2d 12, 14 (4th Cir. 1980). Limiting payments for lighting and street light maintenance to subdivisions that are built out is a rational means of controlling costs. Defendant is entitled to summary judgment on Plaintiff's equal protection claim.

### C. 42 U.S.C. § 1983

Plaintiff also asserts a claim under 42 U.S.C. § 1983 independent of the vagueness and equal protection claims. Plaintiff argues that Section 6-9.3 states that the City shall assume payments once the two requirements are met, and Plaintiff has met the requirements. Plaintiff contends that it is being deprived of a property interest to which it is entitled. While not titled as such, it appears that Plaintiff's

§ 1983 claim is a due process claim, and the Court will analyze it as a due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause provides for two different kinds of constitutional protection: substantive due process and procedural due process. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994). A violation of either of these kinds of protection may form the basis of a § 1983 lawsuit. Id. (citation omitted).

The Court's task is complicated by the fact that Plaintiff has not specified whether it is making a substantive or procedural due process claim. Assuming Plaintiff is alleging a substantive due process claim, the Court's job is further complicated because Plaintiff has not stated whether the challenge is to a legislative act or an executive act.[3] In order to cover all bases, the Court will analyze (1) a substantive due process challenge to Section 6-9.3 (legislative act); (2) a substantive

---

[3]The Eleventh Circuit has distinguished between legislative and executive acts. "Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. . . .Legislative acts, on the other hand, generally apply to a larger segment of - if not all of -society; laws and broad-ranging executive regulations are the most common examples." McKinney, 20 F.3d at 1557 n. 9. The court provided an example of a legislative act versus an executive act in Abele v. Hernando County, 161 Fed. App'x 809, 814 n. 2 (11th Cir. 2005), which involved a challenge to building code ordinances. The plaintiff's challenge to the ordinances themselves constituted a challenge to a legislative act, but the plaintiff's challenge to the application of the ordinances constituted a challenge to executive acts. In the context of the case before the Court, Plaintiff's challenge to Section 6-9.3 constitutes a challenge to a legislative act, and the challenge to the application of the regulation to Plaintiff is a challenge to an executive act.

due process claim regarding the City's alleged interference with Plaintiff's property rights (executive act); and (3) a procedural due process claim regarding the City's alleged interference with Plaintiff's property rights.

### 1.    Substantive due process - Legislative act

As discussed *supra*, Section 6-9.3 does not implicate a fundamental right. "Substantive due process challenges that do not implicate fundamental rights are reviewed under the highly deferential 'rational basis' standard." Schwartz v. Kogan, 132 F.3d 1387, 1390 (11th Cir. 1998) (citation omitted). The Court has already determined that Section 6-9.3 is rationally related to a legitimate government purpose. Therefore, Defendants are entitled to summary judgment on this issue.

### 2.    Substantive due process - Executive act

With regard to a challenge to an executive act, a plaintiff must identify a fundamental right. "[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause [as applied to non-legislative acts,] because substantive due process rights are created only by the Constitution." Abele v. Hernando County, 161 Fed. App'x 809, 815 (quoting McKinney, 20 F.3d at 1556) (quotations and citation omitted)). As previously discussed, property rights are not fundamental rights. A deprivation of property and land-use rights 'cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally." Greenbriar Vill., L.L.C., 345 F.3d at 1263. Thus, even assuming Plaintiff had a property right with which the City interfered by refusing to pay for the street lights,

15

Plaintiff's claim necessarily fails because interference with a state-created property right cannot support a substantive due process claim. Defendants are entitled to summary judgment on this issue.

### 3. Procedural due process

"'A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process.'" <u>Lawyer Doe v. The Florida Bar</u>, --- F.3d ---, No. 10-11974, 2011 WL 149523 at *4 (11th Cir. Jan. 19, 2011) (quoting <u>Cryder v. Oxendine</u>, 24 F.3d 175, 177 (11th Cir. 1994)). The question here is whether Plaintiff had a constitutionally protected property interest of which it was later deprived.

Plaintiff contends that it had a property interest in a benefit - the City's assumption of the street light payments. The Supreme Court stated in <u>Roth</u> that "[t]o have a property interest in a [claimed government] benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577. Plaintiff has not shown that it had a legitimate claim of entitlement to the benefit. Other than making a conclusory statement about the matter, Plaintiff has pointed the Court to nothing to support its contention that it has met Section 6-9.3's requirements. It certainly has not directed the Court to any evidence to support its contention. Thus, while Plaintiff has shown a desire for or expectation of the benefit, it has not shown an entitlement. Without making that

showing, a procedural due process claim cannot stand.[4] Defendant is entitled to summary judgment on the procedural due process claim.

IV. **CONCLUSION**

For the reasons discussed herein, Defendants' Motion for Summary Judgment (Doc. 15) is granted.


**SO ORDERED**, this the 31st day of January, 2011.


*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh

---

[4] As the Court has determined that Plaintiff did not have a protected property interest, it is not necessary to address the other prongs of the procedural due process test.